Good afternoon, counsel. As you probably both know, you each have 20 minutes. I want to ask the appellant whether you would like to reserve any of that time for rebuttal. I'll probably reserve five minutes. Okay. And also just to remind both of you that this microphone does not amplify, it only records, so keep up your voices nice and loud. And when you start your argument, please tell us what your name is. All right, come on up. May it please the court and counsel, my name is Joseph DiPasquale. I represent the plaintiff appellant's Fareed Okich. This appeal raises two main issues. First, whether the trial court properly barred evidence of surgical injury and the surrounding circumstances. And two, whether the evidence the jury was permitted to hear was a sufficient basis for the verdict. If this court remands the case for a new trial, a secondary issue is whether the trial court properly limited evidence related to damages. Is there an issue, a separate issue, from barring the surgical injury, whether the alleged conversation with, between the doctor and the sister-in-law should have been admitted on the theory that the judge did let go to trial? Is that a separate issue? That it should have come in any way, even on the limited theory that he did allow the case to go forward? Yes, Your Honor. And to address that conversation specifically, I do want to speak about the compelling evidence that the jury was not permitted to hear in this case to begin. This is a medical malpractice case involving a gallbladder removal surgery and subsequent follow-up treatments. And there are three pieces of critical interrelated evidence that was excluded by the trial courts in error. First, defendant Dr. Diniotis testified at his deposition that tragically his son was diagnosed with brain cancer only a month or two before the planned surgery of the plaintiff. And that this news understandably took an emotional toll on him. Second, it's undisputed that there was an unintended injury during the gallbladder removal surgery on August 18, 2012. And the surgery was performed solely by Dr. Diniotis. And third, the bile duct injury went undiagnosed for over a month until the plaintiff was admitted to Our Lady of the Resurrection Hospital on September 22, 2012. During that stay, plaintiff's sister-in-law, Elvira Okich, testified in her deposition that during the hospital admission, Dr. Diniotis had a conversation with her in a private room, explained to her that at the time of plaintiff's surgery, that he was coping with his son's terminal diagnosis, it was weighing heavily on him, and that in light of that, he should not have performed the surgery, and that he was sorry. Am I correct that her deposition does not appear in the record anywhere? The transcript of the deposition is not in the record. That is correct, Your Honor. There is lengthy discussion about contents of that deposition testimony in the pre-trial hearings. And a little bit in the post-trial hearings. But most of the characterization of what occurred comes from the motion in limine and your objections to the motion in limine. That's correct. Now, the trial court reasoned that because plaintiff's sole expert conceded at his deposition that he was not qualified to render an opinion as to the surgical standard of care, the surgery and evidence related thereto was off the table at trial, and this was an error of law. Plaintiff had two other sources, other than his own expert, to establish the standard of care and a breach thereof. First is Dr. Diniotis' own statements, and second is the juror's lay knowledge. As to Dr. Diniotis' own statements, these would be statements he made at his deposition related to how the diagnosis of his son was weighing heavily on him, and, of course, Ms. Okich's testimony about the conversation they had in the hospital. Now, I cite in my brief to Gorman v. St. Francis Hospital. Does that go to standard of care, though, that statement? Yes, Your Honor. Standard of care is what a reasonably prudent doctor or professional would do in the same or similar circumstances, and his statement to Ms. Okich that he should not have performed that surgery in light of his mental and emotional condition goes to standard of care and his breach thereof. Did you have an expert to say that? No. The expert would have been Dr. Diniotis. Oh, himself? Correct. To either admit or deny that he made that comment? Correct. And Ms. Okich would have provided testimony instead? Presumably. The defendant would have said, A, I never said it, and, B, yes, my son was diagnosed, but it had no effect on my performance, right? Presumably that's what the defendant would have said. So my question is, did you have an independent witness or an expert witness to opine to a different conclusion? Plaintiff did not have a retained expert witness to opine on that subject. Ms. Okich's testimony would have been proffered to contradict the expected testimony of Dr. Diniotis, that he denies the conversation. Let's assume you now have that conflict. It was said, it wasn't said. Wouldn't you need an expert to say, assuming it was said, it would have been a breach of the standard of care to go on with the surgery in light of those circumstances in his family? That expert would be Dr. Diniotis. His statement to Ms. Okich establishes that standard in his breach. Which he denies. That's what I don't get. You have a denial. You have a statement. The witness says he said it, and then you have the denial. Now what? Now that can be impeached and contradicted by Ms. Okich's testimony. Yeah, but she said he said it. He said I didn't say it. So what was the jury to do with that, assuming they agreed that he said it? To determine who they believe. Well, right, but wouldn't they also have to determine whether that breached a standard of care? Wouldn't you need an expert to say, assuming that he was in this circumstance, this emotional circumstance, he should not have, in my opinion, performed the surgery? And that is what Dr. Diniotis, what Ms. Okich says. What Justice Pierce is getting at is even in at least the way it's characterized in the record as to what she would have said, she doesn't say that the doctor said I breached the standard of care or I did something no reasonable doctor would have done. All he says is something far vaguer than the deviation from the standard of care. He doesn't really say that based on what we have in the record. And he certainly did not use those words, I breached the standard of care or this is the standard of care. Or no reasonable doctor would have done this or it wasn't reasonable for me. I mean, what is it? You know, we don't have something that we can lay our fingers on, even if the jury were to believe her that he said what she said he said. And I believe Gorman is an analogous case that can perhaps shed some light on this. In Gorman, it was an x-ray overdose case and the plaintiff did not have an expert as to standard of care or breach of standard of care in that case, similar to this case. The defendant doctor was cross-examined and testified on cross-examination that a 10-minute exposure of high-dose x-rays would be taking, quote, an undue chance. That was permitted by the First District as sufficient evidence of standard of care and breach thereof to support the jury's verdict in that case. I mean, first of all, it's direct testimony from the doctor, which is part of a trial court. That's the doctor actually testifying as opposed to an admission. I'm not sure I see a difference between those two. They're both testimony of the doctor. But it still sounds clearer to me than what we have here. Undue chance, undue – I didn't hear any undue anything. I mean, part of the problem is we don't have this deposition, and that's on you. Right? If the court would grant leave to supplement the record at this time, we'd be glad to. I don't think there's really any dispute as to what Ms. Okich's testimony would have been. Okay. That's what I'm assuming. If you really disputed what – how the defendant characterized Ms. Okich's testimony, you would have made sure we knew what – and you would have made sure the trial court knew what she really said. Oh, no, it was far more than that. She said that he said – okay. No, I believe our discussions with the trial court on this issue accurately capture what the substance of that testimony was to be. Okay. And just in the defendant's brief, the defendant argues that a bile duct injury is a known risk, a recognized risk of this type of surgery. However, that doesn't mean that this risk can be flaunted. A recently prudent doctor in similar circumstances must take steps to minimize risks. What was the testimony of trial? That a bile duct injury is a risk of surgery? Yes. Was there any testimony before the jury that it was more than a bile duct injury? The bile duct was severed. Was there any testimony to that effect, to that statement? The finding – and this was testified to as to by Dr. Chan, the subsequent surgeon. Her finding was that the bile duct was transected at the time that she came in for the subsequent surgery. So it was a laceration or a cut of the bile duct. So the jury heard that the bile duct had been lacerated? Very minimally. The judge was very careful during trial not to permit much discussion about the surgery at all, which is, of course – So the jury never heard what the origin of this patient's problem was? Correct. The story began after the surgery had ended. The trial judge did not permit plaintiffs to present any testimony about what happened during that surgery other than an acknowledgment that there was an injury to the bile duct. Not who committed it, how it was committed, just that it existed. Now, again, speaking about risks, by analogy, a surgeon can't perform a procedure inebriated, make an error, and be absolved simply because the error was a known surgical risk. As to whether this falls within the lay knowledge exception, the defendant claims that lay knowledge does not apply here, That case, however, is distinguishable. That involved an extremely difficult thyroid surgery where the thyroid gland was surrounded by scar tissue. What was your argument that lay knowledge applies? What was it about lay knowledge that they should know about? Why would a layman know anything about this surgery? The gallbladder itself is located several inches away from the bile duct. The bile duct was not to be cut at all during this type of surgery. It's unrelated to the gallbladder. But how would they know that unless somebody told them that? I think it's your point, right, that a jury should know, be told, that lacerating the bile during this gallbladder surgery may or may not be a risk of surgery. But why wouldn't the jury be allowed to hear that it was severed at the time of the initial surgery? Did Judge Parkwood explain that? Because there was his reasoning relied mainly on the fact that plaintiffs did not have an expert as to standard of care and breach related to the surgical procedure. Right. But you had two theories, malpractice in the surgery, malpractice in the post-surgery treatment. That's correct. Right? You were totally precluded from presenting any evidence as to your first theory. That's correct. And as I understand it, you were precluded from presenting the cause or a substantial fact of the second element of your claim, the post-operative care. That's correct. Why he was having all this trouble. That is correct. And again, the basis from Judge Parkwood's was the surgery was off the table, he wanted to minimize any discussion about what happened during that surgery. Well, just to clarify Justice Pierce's question, you were not precluded from, the jury was not, the jury was informed that the reason he had all the post-operative problems was because of the transaction of the bile duct. They didn't know that. That is correct. They knew why he was having post-operative problems. They just, you just weren't allowed to talk about the surgery itself. That's correct. Okay. And the... So were you allowed to present evidence that, through your expert, a patient who presents himself post-Gaubler surgery, having these symptoms that the plaintiff says he had, requires or the standard of care calls for some sort of testing to determine why he's having these symptoms? Yes, Your Honor. The plaintiff was permitted to present his experts to testify on to the post-operative care. Okay. And were they, did they then at any point say that a transected bile duct likely would cause the symptoms that this man demonstrated, that he said he demonstrated? I'm not sure he used those words specifically, but that was ultimately the conclusion, that when you have persistent leakage, you need to diagnose what the issue with that is. And the jury heard testimony from your expert that that's what has to be done in those circumstances? Yes, Your Honor. Okay. So the jury heard that a patient who presents himself with a transected bile duct, who is vomiting and has different stool colors and et cetera, et cetera, et cetera, needs to be examined to determine why and then deal with it, right? Yes, Your Honor. And that was your expert's opinion, that he didn't do that promptly and that's what caused these problems for the next month or so? Yes, Your Honor. The jury heard that testimony? Yes, Your Honor. And further back to the lay knowledge portion, beyond the mechanics of the surgery itself, the lay juror can comprehend that a surgeon should not be performing a procedure when their mental or emotional facilities are impaired. Now, the second issue for discussion is... Did you argue that at the trial court, that that was what the lay jury, that that was the lay test? That was the basis on which you could proceed without expert testimony, was that the lay jury could figure that out, that nobody should proceed? Not specifically in that discussion. I think it was a running theme in many of the pretrial discussions that this issue as to his, Dr. Diniotis' facilities being impaired was something important to bring in front of the jury. Now, as to the sufficiency of the evidence, Plaintiff has requested J&OV, a new trial, and the standards are different. This J&OV is certainly a very high standard where only all the evidence when viewed in the aspect most favorable to the non-movement so overwhelmingly favors the movement that no contrary verdict based on the evidence could ever stand. Plaintiff recognizes this is a high standard. This is really credibility, isn't it? We've got your expert on one side, Dr. Wu on the other. We've got your client's family members on one side, Dr. Diniotis on the other. These are all credibility determinations, correct? Which is why Plaintiff also argued that this goes to the manifest way to the evidence and entitles Plaintiff to a new trial. We still maintain that this isn't just a credibility determination because the evidence itself was insufficient for the conclusions that Dr. Diniotis and Dr. Wu reached. But when analyzing this under the manifest weight standard, trial courts have a greater degree of discretion in reviewing the evidence. The courts may weigh the evidence. And the test for a new trial is met when a contrary verdict is clearly required or when the jury's findings prove to be unreasonable, arbitrary, and not based on any evidence. Well, they had evidence from Dr. Diniotis that nothing improper happened, that he met the standard of care, correct? In his own interest, he testified accordingly. And what about his expert? His expert concluded that he agreed with Dr. Diniotis. Well, that's something that the jury had to accept or did not have to accept, or what? Why would they have to not accept that and accept your expert's opinion? That's, I think, the basis of Judge Memphis' comment that we have an expert, you know, the cold battle of the experts. And our position is that the basis of Dr. Diniotis' and Dr. Wu's testimony was speculative. Dr. Diniotis' notes contained only handfuls of words. Despite this being a GI-related surgery, he didn't record even basic vitals like weight, temperature, amounts and color of the fluid that was in the drain. And there were no diagnostic tests performed at all until the plaintiff was hospitalized about a month after the surgery. There is a gap of evidence upon which these opinions by defendants and his expert are based. And your expert said all those same facts and opinions and testimony from your client and his family paint a different picture than the picture that the defendant is painting, right? I mean, you get the contrary position. Your doctor said this happened, and the defendant's case said something else happened, right? Yes. So what's the jury to do? Pick one of the two, correct? Yes, Your Honor. And, again, our position is that the basis for the defendant's testimony was insufficient and speculative. The total lack of notes by Dr. Diniotis and the conclusions that Dr. Diniotis and Dr. Wu come up with, Dr. Diniotis' testimony was self-serving. And Dr. Diniotis conveniently testified that his practice is to only note if a patient reports a sign or a symptom of injury. However, this is contradicted by the fact that the only symptom noted on the day the plaintiff was hospitalized was jaundice. Even though he had nausea, pain, white stool. It's your burden of proof, right? The defendant doesn't have a burden of proof of this stuff. That's correct, Your Honor. And Dr. Diniotis' notes are also not in the record. Is that correct? I believe that it's correct, Your Honor. So the jury heard all that. Yes. And they decided to go in favor of the defendant. So you really don't have any other evidence that you were precluded from presenting that you think may have turned the verdict around, do you? Other than the evidence discussed earlier in our oral arguments related to Dr. Diniotis' statements to Ms. Oakage and statements related to his mental condition. Right. Unless there's questions, I want to make sure you save some time for rebuttal. No questions? No, Your Honor. Unless you have some major points that we'd like to go over a little bit, I do want to have time for rebuttal. Thank you. Good afternoon, Your Honors. My name is Catherine Weiler and I represent Dr. Diniotis in this appeal. Mr. Oakage had his day in court. He had the opportunity to present to the jury all of the relevant evidence in support of his claim. And after evaluating that evidence, the jury ruled in favor of Dr. Diniotis. Because he succeeded on your motion to limit it. They had all of the evidence that was relevant to his claim. And here, what the trial court properly decided was evidence related to intraoperative care was not at issue in this case. Yes, but the relevance is determined by the pleadings, right? What's at issue in a case is determined by the pleadings. It's relevant and admissible. And the trial court ultimately has to make a determination about what in the pleadings should go to the jury or should go forward at trial. Well, paragraph 12 says, during the aforementioned, whatever, surgery, the defendant negligently lacerated the bile duct, common bile duct. Failed to note it, and the defendant denies that. So it's, quote, an issue. It's an issue because it was pleaded. That does not mean that that claim should go to the jury. Well, no, but going to the jury is a separate thing. See, that's, now you're getting at what I just don't understand. You have motions for summary judgment. You have motions for directed finding. You have motions for judgment and it takes away a cause of action from somebody. But basically what happened here was the trial judge found that there was not enough evidence and therefore barred putting in any evidence. What the trial judge found here was that in order to present to the jury a medical negligence claim, that claim needs to be supported by some sort of... Motion for summary judgment. Motion for summary judgment. The motion eliminated was not seeking summary judgment. The motion eliminated was... The motion asked us that's what you got. It's not what the defendant got, Your Honor. What the defendant got was a trial that presented to the jury only the evidence that would be relevant to the issues in trial. And the reason I keep saying relevance, I understand why the court is asking based on the pleadings isn't this relevant. The answer to that is if there is no testimony to support that claim and here, for example, there was no testimony to support a claim of intraoperative negligence because there was no medical testimony supporting such an allegation, then how is the jury entitled to hear some sort of argument on that point? It would not be relevant to the issues that the jury is being tasked with deciding. The jury is being tasked with deciding whether there is negligence in this case. But there was no motion for summary judgment in this case, right? Not on this point, no, Your Honor. There was no motion for summary judgment. That's correct. That's correct. That's correct. Again, then it's just saying that because you don't have enough evidence, we're not allowing any evidence. Whatever you got. The plaintiff was allowed and did, as the court has seen, argue extensively about various pieces of evidence that Mr. Oakage believed the jury should hear. So, for example, we've heard extensively today about the discussion that Dr. Deni Otis purportedly had with Ms. Oakage. Is that testimony sufficient to put the jury in a position to evaluate the merits of a claim of medical negligence for intraoperative care? There was no other evidence to support such a claim. You're saying that that is a matter of law, but that's a motion for summary judgment. So the motions in limine should be taken collectively. There were several of them. It wasn't just one, and it wasn't just one motion in limine that sought to bar any specific issue completely, comprehensively. The motions in limine were divided to address discrete issues. So, for example, motion in limine 25 sought to bar a testimony that Dr. Deni Otis made a mistake. Mistake, and Justice Pierce, we can get into this shortly, mistake is not the same as negligence. This is something you were suggesting. How does that establish standard of care? And more importantly, this is not to put words in the court's mouth, but how is that testimony about mistake relevant in a case where it could only cause confusion? Was there direct testimony that during surgery his bile duct was lacerated? There is not direct testimony about what happened during the surgery. Why would that not be relevant to the question of why does this patient present post-surgery having these problems? Two points to explain your question, Judge. First of all, the jury was informed that the bile duct was transected. The reason I can't answer your question about why weren't they specifically told of the transection directly, the reason I can't answer that yes is Dr. Chan discussed Mr. Okich's condition during Dr. Chan's testimony at trial. Dr. Chan is the surgeon who repaired the bile duct after Dr. Deni Otis transferred her over. He made the referral to her. She testified about his condition. Also, the jury was certainly informed in opening statements. They were informed throughout the trial. This is why post-operative care was required. And the jury was informed of the reason why Mr. Okich was presenting with the specific symptoms with which he presented. So can I give the court a specific guess? They were given testimony that he presented in this condition, and that condition was the result of having a lacerated bile duct? That's correct. Yes, Your Honor. Yes. But didn't, you know, I think this all raises, did the court give you something a little bit more than you actually asked for in your motions in limine? Because what you asked for is that the plaintiff not be able to testify that he made a mistake, and that the plaintiff's sister-in-law not be able to testify as to the conversation. But what actually you got was barring any questioning about the surgery. Not necessarily. And that's, again, why the court needs to look at these are individual motions in limine, and what was the relief requested through each individual motion in limine. And I already spoke about a motion in limine 25, which was to borrow a testimony that Dr. Diniotis made a mistake. I'm going to the doctor's cross-examination. And I think the plaintiff's counsel is saying your intent was not to do anything with the common bile duct, correct? That's correct. And, in fact, the standard of care is that it should be separated, identified, and avoided. Objection, your Honor. And then the court, we are not to discuss this. And so they were barred from even talking about what happened in the surgery. That's based on motion in limine 24. Motion in limine 24 sought to borrow argument related to intraoperative deviations from the standard of care because there was not any testimony from an expert to support that claim. Yeah, but they wanted to put some on, not an expert, two exceptions. One, well, they wanted your client to testify to it, which the court wouldn't allow them to do. And they said that this common knowledge exception applied. But because they didn't have enough evidence, they weren't allowed to put on what evidence they had. And the trial court properly considered those two arguments. So when there was argument about motion in limine 24, to borrow argument related to intraoperative deviations from the standard of care, the response from the court was, do you have an expert who will offer these opinions? The answer was no. That is not a contested fact. Dr. Blond, plaintiff's expert, agreed. I have no opinions related to standard of care intraoperatively. Okay. You have a second to go. Fifth point of your Honor, judgment in your favor on that issue. That's not correct, Your Honor. What the judge ordered was that because there was not, because the plaintiff's expert had not offered opinions about intraoperative deviations from the standard of care, there could not be testimony about or argument about intraoperative deviations from the standard of care. There would not be that testimony. Do you have precedent for a court doing it this way, via a motion in limine, basically eliminating one whole theory from the plaintiff's arsenal? Do you have precedent for that? No, Your Honor. The precedent is the reverse of that. The precedent is, and Purcell v. Hess, the Supreme Court, has said this, and I will quote, unless the physician's negligence is so grossly apparent, or the treatment is so common as to be within the everyday knowledge of a layperson, expert medical testimony is required. Right. And Ms. Purcell, I don't recall, was that in the motion for summary judgment? How does that come up? We're not disagreeing with your legal argument, per se. I mean, that's a separate issue, whether there was an exception to the need for expert testimony here. But can you do it this way? You can because if there is not expert testimony, which, again, is required, if there is not expert testimony supporting that there has been a deviation from the standard of care, and that is what the in limine order found. The in limine order was there can be no argument related to intraoperative deviations from the standard of care because there is no expert testimony to support it. That is just a ruling in limine. That is a ruling that controls what evidence the jury can hear. That is an appropriate ruling based on precedent, based on Illinois Supreme Court's precedent, that requires expert testimony to support allegations of a deviation from the standard of care. Otherwise, how is the plaintiff going to prove this claim? Why is this evidence going to the jury? What is the purpose of that? How is it relevant? Well, would it be relevant if there was no malpractice in the surgery? Is it relevant that he had a last-rated bile duct in relation to considering whether he received proper postoperative care? The jury heard that information. The jury heard that information. So this is not a case where the plaintiff was barred from describing the plaintiff's condition or where the plaintiff was barred from. This is an extreme example, but it's an important one to your point, Your Honor. Mr. Oakridge was not barred from telling the jury that he had undergone this surgery, for example. This isn't a case where the case picked up on the day after surgery and the only question was this particular physician who was examining this particular patient, did he err postoperatively? There was testimony that established exactly what were the circumstances of the treatment here. That Supreme Court case you cited, what was that case? It's Purtill v. Hess, and I'm happy to give the court the citation. It's 111 Illinois 2nd, 229 at 242. And that was a motion to eliminate case? It was not a motion to eliminate case, Your Honor. Right. And the other one you cited, Compte v. O'Neill, was a directed murder. That's correct. It was not a motion to eliminate case, Your Honor. But, again, this ruling was in the context of a motion to eliminate. That was the relief that was sought. In your case. That's correct. And I can't say any precedent for doing it this way. And I guess your answer so far is no. For doing it this way, what Purtill did in other cases. Definitely the rule of law that you need an expert to go forward, yes. But I just – it seems somewhat unorthodox to do it via a motion to eliminate. Well, the Court is interpreting – and, Justice Kiffin, this is what you said. The Court is interpreting this as some sort of a summary determination. But that's not what it was. It was a ruling on a motion to eliminate. And that's the distinction here, Justice McFadden. That's why we can't point to a specific case because the rulings here were on motions to eliminate related to specific pieces of evidence. Is the jury allowed to hear these specific pieces of evidence? And the answer to that is yes. And as importantly, that is considered under an abuse of discretion standard. In this case, did the trial court abuse its discretion? But if you were here at summary judgment, it would be denied. So that's – you know, that's a little problematic. But the questions before the Court concern rulings on motions to eliminate. They do not concern rulings that specifically determined either there is liability or there is not liability and judgment should be entered for one party. That's not the request. Well, if you're barred from any evidence, testimony, questioning, or argument, or innuendo that Dr. Dionytus was negligent in performing the surgery, you're pretty much not going to win that case. If the plaintiff had offered any testimony or any – excuse me – any medical testimony, any opinions in support of that theory, the plaintiff would have been allowed to present those to the jury. The plaintiff did not offer any of those opinions. And, in fact, the plaintiff attempted to. Now, these are – Couldn't he obtain – theoretically obtain that evidence through the defendant when he called him as an adverse witness? No, he could not. And, Justice Pierce, this is exactly what you were talking about, the scenario that the plaintiff presents. Dr. Dionytus would not have acknowledged that any conversation like this happened. That's what was testified to in his discovery – I believe that's in his discovery deposition. If it's not, I apologize to the court. I'm not trying to mislead the court on that. But even for the sake of discussion before this court, if Dr. Dionytus had suggested somehow that there were a mistake – I made a mistake in the surgery. As the court knows, mistake is not a description of the standard of care. It does not establish the standard of care. It does not establish a deviation from the standard of care. It does not establish causation. And what Mr. Okich is trying to argue on appeal is the mere statement that Dr. Dionytus purportedly made, that there was a mistake, would somehow satisfy all three of those requirements, that there was – that this is the standard of care, which is not discussed at all, that there was a deviation, which is not discussed at all, and that there was causation. It's simply insufficient to establish any of those requirements. Therefore, it makes no difference whether that testimony was properly or improperly borne by the trial court. It would not have established what the plaintiff was trying to prove in this case. If the plaintiff conducted no discovery, filed this complaint, said I'm ready for trial, and you move in limine to say that the plaintiff would not be allowed to question the doctor about what he did at the time of surgery and whether he committed no fracas or negligence or mistake, do you think the plaintiff would have any evidence to present to the court because he presented no – or took no depositions? Couldn't he say, Judge, I'm going to put the defendant on the stand and I expect him to tell the truth as to what happened during surgery, and his testimony is going to win my case for me? No, Your Honor.  He couldn't do that or – Under – Under evidence. No, I don't see how he could do that. Now, I'm not trying to avoid the court's question. Rule 213 exists to preclude exactly that type of conduct. So I don't see how – if you do no discovery, you identify no evidence that you intend to present at trial, and you do absolutely nothing to work up your case, what the defendant could do – There's no requirement to take discovery. There's no requirement to make any disclosures is what I'm suggesting. I'm sorry. I have none to disclose, Judge. My witness and only witness is going to be the defendant doctor. I'm going to put him on the stand and tell him. Before – before Rule 213, Your Honor, it is – Your Honor, I want to make sure I'm answering the question. Is the court suggesting that a party, a plaintiff, could proceed to trial without any disclosure at all? Not – not any – not conducting any depositions. I mean any disclosure. Yes. I don't see how that would be allowed under the rule, and what I anticipate would happen in the court scenario is – Only if you disclose your experts. Retained and not retained experts. Then your witnesses. My only witness is going to be my client and the defendant doctor. And is there a description of the anticipated testimony in that case? Yes. I expect him to tell the truth. And it's a – I mean I'm trying to follow court's – We're not there, but I believe a plaintiff could do that. There's no requirement on a plaintiff to lay his case bare before a court in motions, in limine – in anything. I'm ready for trial and he's my witness. So why wouldn't the defendant in that scenario be able to file a motion in limine to bar the plaintiff from seeking to elicit testimony not disclosed under Rule 213? Because he's a party. So the court is saying that – See, young lawyers don't remember the day when discovery wasn't really that big a deal. Now discovery is everything. But there's no requirement to take discovery. So the court is saying that in this – No, I'm just posing a question. I don't want to debate and take up all your time. I'm just saying I believe a plaintiff could do that. But in this case, that's not what the issue – the issue is not about – That's to the point of you, a defendant, being able to preclude a plaintiff from putting on his case through motions in limine by saying, I don't want the plaintiff to be allowed to get this out of my client. I don't want this evidence. I don't want that evidence. And the plaintiff's standing there saying, I don't know what he's going to say, but I expect him to tell the truth and I expect to win the case based on his testimony. But the motions in limine here didn't concern – the motions in limine that we're discussing today are motions which barred Ms. Okich's testimony. She's not a party. And a motion in limine that barred – The defendant from saying he made a mistake during the search. That barred any evidence or argument about whether there was an intraoperative deviation from the standard of care because there is not an expert. The plaintiff has not offered an expert who would testify to that point. That's not a party in this case. The motions eliminated a different testimony. Don't get hung up on the expert part. Concentrate on the defendant part. The plaintiff is entitled to call the defendant. If he's risky enough to take the chance that the defendant is going to get on the stand and testify truthfully in his opinion that malpractice was performed, he doesn't have to disclose that. There's nothing to disclose. He doesn't know what he's going to say. I guess two things in response to that, Your Honor. First, Dr. Demiotis in this case was deposed and he testified there was no deviation from the standard of care. Why don't you get out of the room? I apologize. I'm sorry, Your Honor. I don't want to take up all your time here. You're just obviously not getting what you're saying. I apologize, Your Honor. I apologize. But back to the – to your point earlier. The testimony that we were talking about that Ms. Oakage was offered to provide. It's not just that, though, because the Court said – we get what you're saying about Ms. Oakage. But the Court said he granted motion limiting number four and he said, I'm not going to allow any testimony that either directly or indirectly presents to the jury some question as well as if the skill level of the doctor in the operating room was below the standard. And regardless – and this I think is Justice Pierce's point – regardless of what discovery the plaintiff had, he could have tried to prove that case, to prove that part of his case at trial. And the trial court's ruling here was the plaintiff did not have evidence to prove that claim. So I'm not going to put any evidence to prove it because you don't have it. Because you don't have it. Then you let him put it on and you grant it J.N.O.B. or you grant a directed verdict or you let him put on what he's got. And if it's not enough, it's not enough. Even if this Court – even if this Court determines that this should not have been granted as a motion to eliminate and there was – and the abusive discretion standard doesn't apply. The evidence here does not satisfy the requirements that the plaintiff has identified for a new trial under the manifest weight standard. And that's what the Court has before it. The record that was presented in this case about the testimony that was anticipated. The plaintiff argued all of this in motions eliminating. The plaintiff identified exactly this is the information that we anticipate would be presented to the jury. That testimony is still not sufficient to satisfy the standards to get past where we are today, which is a jury verdict in favor of the defendant. Maybe we read this before, but at the trial, the cross-examination, your intent was not to do anything with the common vial duct, correct? That's correct. And in fact, the standard of care is to be separated, identified, and avoided. Now, we don't get that answer because the Court said we're not going to discuss this. So maybe the defendant would say, yeah, that's the standard of care. The defendant – I don't know. The suggestion, Your Honor, is that Dr. Daniotis would have acknowledged at that point at the trial – I'm kidding. I'm kidding. But the point is when you're saying we don't have the evidence in the record because of the motion eliminating, we don't know how that question would have been answered. The Court said we're not going to discuss this. We're not going to discuss the procedure. We're going to focus on the fact there was a complication in the court of post-op. Well, there's no – there's certainly no offer of proof about what Dr. Daniotis would have said, which the plaintiff, I suppose, could have made. But we do have the deposition of Dr. Daniotis, his discovery deposition, where these questions were asked and where Dr. Daniotis gave his answers. So even if there were some sort of expectation that there had been an offer of proof, which is what this Court would ordinarily require in this situation, to make a determination about whether the disputed evidence should have come into trial and would have made a difference to the ultimate outcome, even though the plaintiff hasn't presented that, we have Dr. Daniotis' deposition, and he absolutely denies that he deviated from the standard of care. He's explained. This is what the standard of care was intraoperatively, and he did not deviate from it. And I believe – I mean, you're asking us how to reconstruct the trial had he let in the testimony that the plaintiff is suggesting he should have let in, and that's a little hard to do at this point. What the Court is suggesting is that the jury should have been allowed to hear this testimony. That testimony, if in a normal case, if specific testimony were barred, the plaintiff or the defendant never was subject to that ruling would have been expected to tell this Court exactly what testimony would have come in had it been, as the party would be arguing, properly allowed. And in this case, again, we don't have that. I'm not sure that the Court would require that in this unusual situation where we're talking about, as Justice Pierce has been reminding me, testimony from a party. But we do have that party's discovery deposition that walks through all of these exact discussions. And we also have Dr. Wu, who is the defendants' expert. We have his discovery deposition in the record, and the reason it's – who also agrees that there was no intraoperative deviation from the standard of care. These become important points as the Court is considering whether or not the jury should have been allowed to hear all of this evidence. Was there sufficient evidence to support that claim? The answer to that is no. But that's sufficient evidence when you have a jury trial. Isn't that pretty jury-less? No, because there – again, this goes back to Pratil. There needs to be expert medical testimony required to establish the standard of care. If this Court is suggesting that that testimony could somehow have come from Dr. Daniotis, we can look at Dr. Daniotis' testimony in his discovery deposition, which would not have given that – No, you can't look at it. What Justice Griffin is saying is if the testimony comes in, the judge makes a decision as to whether it's sufficient at the directed verdict stage for it to proceed forward. The judge at that point can say, that's all you've got, that's the best you can do, it's not enough, I'm removing the case from the jury's consideration, direct the verdict for the defendant, but you've got enough for your second malpractice theory as to the postoperative claim. We don't know what the testimony would have been had the testimony gone in. The jury could be eminently instructed not to consider it because it's not before them anymore. We do know that there is not expert medical testimony from the plaintiff that would establish a deviation from the standard of care intraoperatively. Yes. And it is the province of the jury to resolve the remaining issues in this case. But he was precluded from even talking about it with the defendant actor who was charged with violating the standard of care. Because he had no evidence that would support that claim. Because he couldn't get it from the defendant. But that's the motion for summary judgment. But, you know, your arguments here are a great motion for summary judgment. In which case, if the court is going to review this record, again, this goes back to what I said a little bit ago about whether or not the verdict was somehow against the manifest weight here. If the court is reviewing this and considering remanding it for a new trial, based on what I guess the struggle right now is, is the court anticipating that there should have been additional motion practice related to summary judgment? And that was the error here? No, the error is dismissing a claim based on a motion for eliminating potentially. And again, the claim was not dismissed. It was a series of rulings on motions eliminated, properly barred evidence that was not going to be supported by the testimony. If the court has further questions. I think you understand this. And I think we understand you. And I think you see a problem, you know, with this procedural way of, I think it is mostly procedural. And I guess if you have any, my only other remaining question is, you know, what can we do other than start over? Is there anything, if this wasn't an appropriate procedure, is there a way to review the record and say it would have come out the same way no matter what? Which seems to be what you're trying to say, but I'm not sure I'm following you. You are, Your Honor. That's exactly right. There is a way to review what is in the record and make a decision about whether it would have come out another way. Is it harmless error? And the answer here is yes. And the court has the ability to look at the record that is before it with all of the information in that record and make that determination. And that's what we would ask the court to do in the event that it believes that the trial court erred. If there are no further questions. Any more questions? No, ma'am. Thank you. What about her point that you could have put in an offer of proof here? You know, these are all motions of limine and one of them is don't put in any evidence about negligence in the surgery. And you could have then said, well, if you would let me put on evidence about the negligence in the surgery, here's what I'd put on. And that was discussed at length in the pretrial hearings. The court was fully aware of what we intended to present through Ms. Okich with regards to her discussion with Dr. Diniotis. Anything other than that? Anything other than Ms. Okich's statement that you intended to put on? I mean, you did try to examine the doctor and got cut off, but did you have anything other than a hope and a prayer with the doctor and Ms. Okich's statement? The trial judge made very clear in both the pretrial proceedings and during trial that discussing interoperative care was off the table, forbidden, would not come in front of the jury. Now, the trial judge's barring of evidence, our argument is that the standard of review here for the new trial, because it's based on this principle of law that plaintiff is required to have a retained expert testify as to standard of care, we believe this should be reviewed de novo, this evidentiary issue. Defendant stated that there was no testimony to support plaintiff's claim that standard of care was not followed or breached. Again, our offered testimony was going to be defendant's own statements regarding his mental and emotional state prior to the surgery and around the time of surgery. And this court found in Gorman that the defendant's testimony was sufficient on cross-examination to establish standard of care and breach thereof. Now, the plaintiff's case was substantially prejudiced by the trial court's rulings that interoperative standard of care was off the table. It was as if a plaintiff was told that you can tell the joke, but you can't tell the punchline. If you can tell the punchline, you can't tell the joke. Correct me if I'm wrong, I actually debated which phrase would be more accurate. Trying to explain the story of what happened to a jury was extremely difficult without being able to discuss what happened during the surgery. And just one final point, the defendant's conversation with Ms. Okich was not a mere apology or condolences. He did not simply say, I'm sorry it's happened. It was an admission that he should not have performed the surgery in light of his condition. He explained to Ms. Okich, I was not in the right mental place due to my son's brain cancer diagnosis, and I shouldn't have done the surgery. Like the doctor in the Gorman case, Dr. Diniotis took an undue chance by following through with the surgery in spite of that. Plaintiff Rita Okich respectfully requests the court enter judgment in favor of plaintiff notwithstanding the verdict of the jury, or alternatively remand the case for a new trial as the verdict was based on speculative, non-probitive evidence, and contrary to the manifest weight of the evidence, respectively. Or remand the case for a new trial as admissible evidence, important evidence, was erroneously barred, which substantially prejudiced plaintiff. Are there any further questions? Thank you. It's very well argued, very well briefed, and we will take it under advisement, and you will hear from us shortly.